[No. B026133. Second Dist., Div. Six. Apr. 21, 1988.]

BRUNZELL CONSTRUCTION COMPANY, INC., OF NEVADA,
Plaintiff and Respondent, v.
KEITH SMITH, Defendant and Appellant.

618

COUNSEL

Richard E. Hodge and Gary G. Kuist for Defendant and Appellant.

Price, Postel & Parma, John Kerr Wilson and Dana M. Sabraw for Plaintiff and Respondent.

OPINION

**GILBERT, J.**—Defendant Keith Smith appeals a judgment and an order denying his motion to vacate renewal of a January 30, 1970, judgment against him. (Code Civ. Proc., § 683.170, subd. (a).) We affirm and hold that California Uniform Commercial Code[1] sections 9504 and 9505 do not apply where the creditor does not take possession of the collateral or where the debtor consents to a deficiency judgment.

FACTS

In 1967 Jalama Valley Cattle Company (Jalama) executed two $100,000 promissory notes in favor of Transamerica Financial Corporation (Transamerica). Keith Smith, the sole shareholder of Jalama, unconditionally guaranteed the loans. To secure the loans, Jalama granted Transamerica a security interest in its livestock, including a one-third interest in bulls "Max" and "Bard." After Jalama defaulted in payment of the loans, Brunzell Construction Company, Inc. (Brunzell) acquired Transamerica's interest in the promissory notes and brought suit against Jalama and Smith.

Jalama and Smith stipulated to a judgment for $251,720, including attorneys' fees and costs, entered on January 30, 1970. This sum was reduced to $160,129.05 by the court-ordered sale of Jalama's black angus cattle herd. The stipulated judgment provided that Brunzell could "satisfy Judgment . . . from any assets not exempt of Defendants, wherever located." It also provided that "Plaintiff may foreclose upon any security interest it may have in any real or personal property of Debtors, wherever located; . . ."

---

[1] Unless stated otherwise, all statutory references are to the California Uniform Commercial Code.

Brunzell's attempts to satisfy the judgment proved fruitless and in 1984, it sought to renew the judgment pursuant to Code of Civil Procedure section 694.030, subdivision (b). After a hearing upon conflicting declarations, the trial court granted the motion. We affirmed that order in an unpublished opinion *Brunzell Construction Company, Inc.* v. *Smith* (July 24, 1986) B013936. We held that the trial court did not abuse its discretion in renewing the judgment, given Brunzell's diligence in attempting to satisfy the judgment and the implied factual determination that Smith was " 'judgment proof.' "

In that prior appeal, Smith argued that sections 9504 and 9505 barred renewal of the judgment because Brunzell elected to retain Max and Bard rather than selling them and applying the sales proceeds to the judgment. We rejected this argument and said: "Appellant's fourth contention is also without merit. In announcing its tentative decision, the trial court remarked that appellant's claim that renewal should be denied on the basis of Commercial Code sections 9504 and 9505, generally establishing procedures and rules for the sale of collateral assets in a commercially reasonable manner was '. . . a bit premature.' Recognizing that he has a potential remedy pursuant to Code of Civil Procedure section 683.170, subdivision (a), to vacate or modify the renewal of a judgment, appellant invites this court to '. . . provide guidance on this question.' We decline and observe that since appellant claims that he has flourished in the interim and has owed money for 16 years, the parties might come to some settlement without the need for further litigation."

Upon filing of the remittitur, Smith brought a motion in the trial court to vacate the renewal judgment, contending that sections 9504 and 9505 precluded renewal. ■ The declarations supporting and opposing the motion conflicted. We view this evidence, however, favorably to the order denying vacation of the judgment, as required by the rule governing appellate review of orders based upon declarations and affidavits. (*Kulko* v. *Superior Court* (1977) 19 Cal.3d 514, 519, fn. 1 [138 Cal.Rptr. 586, 564 P.2d 353], revd. on other grounds (1978) 436 U.S. 84 [56 L.Ed.2d 132, 98 S.Ct. 1690].)

In 1968, after Jalama's default, a court-appointed receiver took possession of and sold Jalama's black angus cattle herd, including Bard. They were sold in 1969. The receiver did not assume possession of or sell Max, however, because Max was pastured in Adams County, Colorado, having been placed there by Jalama and his co-owners in 1967.

After the parties stipulated to the January 30, 1970, judgment, Brunzell employed a Colorado law firm to establish lien priority concerning Max.

Brunzell then offered Max for sale through the "Angus Journal," but received no offers. A co-owner of Max opined that Max and his stored bull semen were worthless because smaller black angus cattle were no longer desirable. In 1972, the Adams County tax assessor assessed Max's personal property tax value at $300. Because of Max's modest value, Brunzell consented to Max's removal to the Arizona ranch of his possessory owner. Arthritic and inactive, Max resided there (we hope comfortably) for the remainder of his life.

The trial judge waved a red flag when he denied Smith's motion to vacate the judgment. On appeal, Smith argues that Brunzell's retention of Max and Bard constitutes either a satisfaction of judgment under section 9505 or a failure to act in a "commercially reasonable manner" under 9504. He asserts that either precludes a deficiency judgment under the reasoning of *Atlass Thrift Co.* v. *Horan* (1972) 27 Cal.App.3d 999 [104 Cal.Rptr. 315, 59 A.L.R.3d 389]. Smith beefs up his argument by contending that section 9501, subdivision (3), prevents any waiver of rights under sections 9504 and 9505. We disagree with these arguments for several reasons and since there are no exceptional circumstances of hardship or injustice, abide by our decision in the prior appeal. (*People* v. *Shuey* (1975) 13 Cal.3d 835, 848 [120 Cal.Rptr. 83, 533 P.2d 211].)

## DISCUSSION

■ After default, section 9504, subdivision (3), empowers the secured creditor to sell the collateral in a "commercially reasonable manner" after written notice to the debtor and other secured parties of the time and place of sale. This notice of sale allows the debtor to discharge the debt and redeem the collateral, produce another purchaser, or ensure that the sale is commercially reasonable. (*Rutan* v. *Summit Sports, Inc.* (1985) 173 Cal.App.3d 965, 971-972 [219 Cal.Rptr. 381].) ■ The secured creditor must prove compliance with section 9504 to obtain a deficiency judgment against the debtor. (*Id.,* p. 972.)

In lieu of resale, section 9505, subdivision (2), permits "a secured party in possession" to retain the collateral in satisfaction of the debt in certain circumstances. The secured party must notify the debtor and other secured parties in writing and upon their timely objection, cannot retain the collateral but must sell it pursuant to section 9504. Uniform Commercial Code Comment 1 to section 9505 states that by retaining the collateral, the creditor releases the obligor and abandons any claim for a deficiency judgment. (See com. 1 to § 9505, West's Ann. Cal. U. Com. Code (1988 Supp.) p. 183, Deering's Ann. Cal. U. Com. Code (1986 ed.) p. 585.)

Although jurisdictions construe these code sections differently, we do not wish to steer the reader astray. Sections 9504 and 9505 are not pertinent here for several reasons. ■ First, viewing the evidence favorably to the order, Brunzell did not retain Bard because the court-appointed receiver sold him in 1969 pursuant to court order. Jalama's herdsman declared that he was present at that auction and implied that Brunzell retained Max and Bard. The herdsman implied that Brunzell retained the two bulls: "I was present when the Jalama herd was sold . . . at auction . . . . I thought at the time that Mr. Brunzell must have realized the value of [Max and Bard], and that he must have concluded that by retaining them he would have more than sufficient assets to satisfy his judgment." The herdsman also declared that Everett Brunzell was present at the auction. Brunzell's president, however, declared that "to the best of [his] knowledge," the receiver sold Bard at that auction. The implied finding of the trial court concerning the weight of this evidence and the credibility of the declarants is conclusive. (*Kulko* v. *Superior Court, supra,* 19 Cal.3d 514, 519, fn. 1, revd. on other grounds (1978) 436 U.S. 84.)

Smith is on the horns of a dilemma when it comes to Max. Both parties agree he was not sold at the 1969 auction. Prior to the January 30, 1970, judgment, Brunzell did not physically possess Max; he remained at the Colorado pasture where Jalama and other owners had placed him in 1967. That does not matter contends Smith, because Brunzell's interest in Max was "nonpossessory," and Max's co-owners had the authority to move him. Nevertheless, Brunzell took no action concerning Max, his co-owners, or other lienholders prior to the January 30, 1970, judgment. This evidences no assertion of control over Max by Brunzell.

■ Second, Smith and Jalama, represented by counsel, negotiated and consented to the January 30, 1970, judgment. We agree with Smith that section 9501, subdivision (3), restricts a debtor's waiver of rights under sections 9504 and 9505.[2] A commonsense interpretation of those sections, however, permits a debtor to waive those rights after default by authorizing a deficiency judgment against him. Sections 9504 and 9505 were amended in 1974 to specifically allow a debtor to renounce or modify certain rights therein "after default." Moreover, neither section 9501, 9504 nor 9505 precludes a debtor from stipulating to a deficiency judgment.

■ Third, Brunzell's postjudgment efforts concerning Max were not governed by division 9 of the California Uniform Commercial Code. Sec-

---

[2] For purposes of argument, we assume, but do not decide, that a guarantor is a "debtor" within division 9 of the California Uniform Commercial Code. (See *C.I.T. Corp.* v. *Anwright Corp.* (1987) 191 Cal.App.3d 1420 [237 Cal.Rptr. 108]; *Rutan* v. *Summit Sports, Inc., supra,* 173 Cal.App.3d 965.)

tion 9501, subdivision (1), empowers a secured creditor to reduce his claim to judgment or to foreclose or otherwise enforce his security interests. These remedies are cumulative and the creditor may pursue alternative remedies until the obligation is satisfied. (*Shultz* v. *Delaware Trust Company* (Del.Super. 1976) 360 A.2d 576, 579.) Execution on judgment and levy on the debtor's property, including the collateral described in the security agreement, are not governed by article 9 of the Uniform Commercial Code. (See com. 6 to § 9501, West's Ann. Cal. U. Com. Code (1964) p. 586, Deering's Ann. Cal. U. Com. Code (1986 ed.) p. 565; *S. M. Flickinger, Co., Inc.* v. *18 Genesee Corp.* (1979) 71 App.Div.2d 382 [423 N.Y.S.2d 73, 75].)

In view of this resolution, we do not consider the parties' remaining arguments.

Accordingly, the judgment is affirmed. Smith is to bear costs upon appeal.

Stone (S. J.), P. J., and Abbe, J., concurred.