Filed 9/30/22 World Botanical Gardens v. Wagner CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| WORLD BOTANICAL GARDENS, INC., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> WALTER WAGNER et al., <br><br> Defendants and Appellants. | H049234 <br> (Santa Clara County <br> Super. Ct. No. 20101CV183957) |

This appeal involves two judgments, one in Hawaii and a subsequent one entered in California. On September 28, 2009, World Botanical Gardens, Inc. (World Botanical or Company) obtained a multi-million dollar judgment in Hawaii against Walter Wagner (Wagner) and Dan Perkins (hereafter, the Hawaii judgment). (The judgment was also entered against Wagner's spouse, Linda Walker.) One year later, on September 30, 2010, World Botanical applied in California for, and obtained entry of judgment on the Hawaii sister-state judgment (hereafter, the California judgment). The California judgment identified the judgment debtors as Wagner and Perkins, and it was entered pursuant to the 1974 Sister State Money Judgments Act (Code Civ. Proc., § 1710.10 et seq.; the Act).[1] The California judgment was served on Wagner and Perkins; neither party filed objections to its entry.

---

[1] Further unspecified statutory references are to the Code of Civil Procedure.

In May 2020, World Botanical filed an application for renewal of the California judgment under section 683.140, and the court granted that application. In July 2020, Wagner and Perkins (collectively, appellants) filed a motion to vacate the renewal of the California judgment, arguing that (1) the sister state judgment from Hawaii (the Hawaii judgment) had been procured by fraud, and (2) the renewal of the California judgment was of no legal effect because the Hawaii judgment was not timely renewed. The trial court denied appellants' motion to vacate by order entered May 26, 2021.

Appellants contend that the trial court erred by denying the motion to vacate renewal of the California judgment. We conclude that appellants' arguments are without merit and will affirm the May 26, 2021 order.

## I. PROCEDURAL BACKGROUND

### A. Hawaii Judgment

The California judgment at issue in this appeal stemmed from an amended final judgment entered by the Hawaii Circuit Court (third Circuit) on September 28, 2009—namely, the sister-state judgment. We briefly discuss the procedural background and substance of the findings from that Hawaii case.

World Botanical filed a complaint in June 2005 against Wagner, Linda Wagner, Perkins, and others. The allegations included claims of conversion, breach of fiduciary duty, misappropriation of corporate trademarks and trade names, corporate mismanagement, and fraud. Before trial, the court granted partial summary judgment in which it found, inter alia, that defendants had converted Company funds for their personal purposes; Wagner had misappropriated Company funds, including payment of " '[l]oans' " that were not loans, payment of " '[b]usiness [e]xpenses' " that were not business expenses, and payment of " '[s]alary' " that consisted of a series of checks used to purchase land held in Wagner's name; and Wagner had diverted Company funds to his unrelated business ventures.

2

After a court trial on April 28-29, 2008, the court presented comprehensive findings and conclusions in a lengthy document. The trial court made findings concerning defendants' improper conduct, which included (1) the sale of Company stock and the diversion of the proceeds to the Wagners' bank accounts; (2) solicitation of investments in World Botanical and in "World Botanical Gardens Foundation," an entity that did not exist, and which was "part of a fraud scheme . . . [to sell World Botanical] treasury shares without authority or authorization to do so and pocket[ing] the proceeds" of more than $351,000; (3) the Wagners' filing of a certificate with the State of Nevada that falsely listed themselves as World Botanical directors and falsely listed other persons as directors who had never been elected by the board of directors; (4) "filing . . . numerous affidavits and declarations by which they falsely claimed to be directors of [World Botanical]"; (5) the filing of false declarations and making other false statements in other litigation; (6) Wagner's filing of a Hawaii suit against World Botanical in which he alleged claims for back salary that had allegedly been reduced to a promissory note (signed by the Wagners as purported corporate officers), thereafter not serving the lawsuit properly on the Company, serving his wife as a purported officer, and then obtaining a default judgment against World Botanical in the sum of $340,736 through false representations to the court; (7) misappropriation of the Company's trade secrets, trademarks, and trade names; and (8) the prosecution and support of multiple lawsuits that caused World Botanical to incur legal fees of more than $450,000. The court awarded substantial damages against the defendants; awarded punitive damages against Wagner ($500,000), Linda Wagner ($150,000), and Perkins ($100,000); and found each of the defendants to be vexatious litigants.[2]

_____

[2] The court in the Hawaii lawsuit also noted that World Botanical had brought a separate related lawsuit against Wagner and Perkins in which the Nevada state court had (1) issued a preliminary injunction; (2) later issued an order of contempt for defendants' having violated a preliminary injunction by entering World Botanical's property and by continuing to sell World Botanical stock without permission and through deceptive

The first amended final judgment was entered on September 28, 2009, against Wagner ($2,405,523.45), Perkins ($1,559,063.35), and Linda Wagner ($1,878,213.50). The intermediate appellate court of the State of Hawaii affirmed the Hawaii judgment on September 20, 2011. On December 6, 2012, the Hawaii Supreme Court denied defendants' application for writ of certiorari.

## B.    California Judgment on Sister-State Judgment

On September 30, 2010, World Botanical applied for and obtained entry of a judgment on the (Hawaii) sister-state judgment against Wagner and Perkins.[3] The application was brought under the Act, and, specifically, under section 1710.15. The California judgment as entered (including accrued interest and filing fees) was for $2,259,581.29 (Wagner), and for $1,328,475.18 (Perkins).[4] Appellants filed no objection to the entry of judgment on the sister-state judgment.

Within 10 years of the entry of the California judgment on the Hawaii judgment, on May 21, 2020, World Botanical applied for and obtained the issuance of a renewal of the California judgment pursuant to section 683.140.[5] The renewed judgment, as updated to

means; and (3) later (on May 29, 2007) entered findings, conclusions, and an order approving sale of defendants' ownership interests in World Botanical, finding that defendants owed World Botanical $427,519 (Wagner) and $174,421 (Perkins), and finding defendants to be vexatious litigants. Defendants appealed, and the Nevada Supreme Court affirmed the judgment.

[3] The record discloses that the Hawaii judgment, as to Linda Wagner, was discharged in bankruptcy. She is not involved in the current proceedings.

[4] The principal judgment amounts differ from those appearing in the Hawaii judgment. This difference is the result of two credits, each in the amount of $351,520, given to Wagner and Perkins, prior to entry of the California judgment, for that portion of the Hawaii judgment that was a duplication of judgments entered in Nevada.

[5] The application for renewal of the judgment was made on behalf of World Botanical and BWA, LLC (BWA). The record shows that after entry of the California judgment in 2010, 50 percent of that judgment was assigned by World Botanical to BWA. Acknowledging that the record shows this assignment of interest in the California judgment, for convenience, we will refer to World Botanical as the respondent in this appeal.

include costs and accrued interest, was for $4,439,792.10 (Wagner), and $2,610,478.89 (Perkins).

On July 21, 2020, appellants filed a motion to vacate renewal of the California judgment. They stated that the motion should be granted "on the grounds that the 'judgment' on which they obtained extension was fraudulently obtained, and previously discharged/extinguished in its sister-state of origin in Hawai'i in 2018." Appellants cited sections 1710.40, 1710.50, and 1710.55 in support of their motion. World Botanical opposed the motion.

The court conducted five hearings. The court ordered supplemental briefing on "whether the California judgment is independently viable and enforceable irrespective as to whether the Hawaii judgment was validly renewed." Both parties submitted briefs on the question. After a hearing on May 11, 2021, the court denied appellants' motion to vacate renewal of the judgment. The formal order denying the motion to vacate renewal of the judgment was entered on May 26, 2021.

Wagner and Perkins filed a timely notice of appeal from the order denying their motion to vacate renewal of the judgment. (See *Goldman v. Simpson* (2008) 160 Cal.App.4th 255, 262, fn. 4 (*Goldman*) [order denying motion under § 683.170, to vacate renewal of judgment appealable]; *Silbrico Corp. v. Raanan* (1985) 170 Cal.App.3d 202, 206 [order on motion to vacate under § 1710.40 is appealable].)

## II. DISCUSSION

### A. Sister-State Judgments

Under the Act, a judgment creditor may submit an application in California "for the entry of a judgment based on a sister state judgment." (§ 1710.15, subd. (a).) As explained by one court, "[T]he Act provides a judgment creditor with the right to enforce a sister state monetary judgment as if it were a California judgment against the judgment debtor. Upon simple application in conformance with the Act [citations], entry by the clerk of a judgment based upon the application is mandatory [citation], constituting a

5

ministerial act of the clerk and not a judicial act of the court [citations]. 'This statutory scheme manifests a legislative intent that its use or applicability be predicated upon a judgment first obtained and rendered outside of this state. The judgment in this state, following the judgment of a sister state, is ministerial only, that is, an activity by the clerk of this court.' [Citation.] Where the judgment debtor fails to challenge the matter, the judgment will be entered and the application will have served its purpose, all without any judicial act having been performed by the court. [Citations.]" (*Aspen Internat. Capital Corp. v. Marsch* (1991) 235 Cal.App.3d 1199, 1203.)

A party may bring a motion to vacate a judgment entered on a sister-state judgment "on any ground which would be a defense to an action in this state on the sister state judgment." (§ 1710.40, subd. (a).) Such a motion must be filed "[n]ot later than 30 days after service of notice of entry of judgment pursuant to Section 1710.30." (§ 1710.40, subd. (b).) The procedure specified in section 1710.40 provides "[t]he sole ground for vacating a [judgment entered on a] sister state judgment." (*Liquidator of Integrity Ins. Co. v. Hendrix* (1997) 54 Cal.App.4th 971, 979 (*Liquidator*).)

## B. Renewal of Judgments

California law specifies a procedure for the renewal of judgments entered in this state. (See § 683.110 et seq.) The application must be filed within the 10-year period that a lump-sum money judgment may be enforced. (§ 683.130, subd. (a).) The application to renew the judgment must be verified and must include the information provided under section 683.140. "The statutory renewal of judgment is an automatic, ministerial act accomplished by the clerk of the court; entry of the renewal of judgment does not constitute a new or separate judgment." (*Goldman*, *supra*, 160 Cal.App.4th at p. 262, fn. omitted.)

The renewal of a judgment may be challenged by a motion filed within 30 days after service of the notice of renewal. (§ 683.170, subd. (b).) The renewal of judgment "may be vacated on any ground that would be a defense to an action on the judgment,

6

including the ground that the amount of the renewed judgment as entered pursuant to this article is incorrect . . . ." (§ 683.170, subd. (a).)

### C. Standards of Review

Based upon the challenges to the order presented by appellants here, we determine that multiple standards of review apply.

In reviewing an order on a motion to vacate judgment under section 1710.40,[6] appellants, "[a]s the moving part[ies], . . . had the burden to show by a preponderance of the evidence why [they were] entitled to relief. [Citation.]" (*Tsakos Shipping & Trading, S.A. v. Juniper Garden Town Homes, Ltd.* (1993) 12 Cal.App.4th 74, 88 (*Tsakos Shipping*).) As a general matter, a ruling under section 1710.40 is discretionary, and it "will not be set aside on appeal unless a clear abuse of discretion appears. [Citations.]" (*Tsakos Shipping*, *supra*, at pp. 88-89.) In determining whether the trial court abused its discretion, "[w]e presume the trial court's order is correct and do not substitute our judgment for that of the trial court. [Citation.] To be entitled to relief on appeal, the court's action must be sufficiently grave to amount to a manifest miscarriage of justice. [Citation.]" (*Peake v. Underwood* (2014) 227 Cal.App.4th 428, 441.) Here, one of appellants' challenges is that the trial court rejected their claim that renewal of the California judgment should be vacated because it was based upon a sister-state judgment—the Hawaii judgment—that was procured by fraud. This appears to be a factual question in which it was appellants' burden to establish by substantial evidence that they were entitled to relief. (*Tsakos Shipping*, *supra*, at p. 88.) For that inquiry, we will evaluate whether the trial court's ruling was a "clear abuse of discretion." (*Id.* at pp. 88-89.)

---

[6] Although appellants, in their motion, sought an order vacating the *renewal* of the California judgment, they cited repeatedly section 1710.40, which governs a motion by the judgment debtor challenging the *initial entry* of a judgment on a sister-state judgment.

7

Likewise, where a motion is brought challenging the entry of a renewal of a judgment, the judgment debtor "bears the burden of proving, by a preponderance of the evidence, that he or she is entitled to relief under section 683.170. [Citations.] On appeal, we examine the evidence in a light most favorable to the order under review and the trial court's ruling for an abuse of discretion. [Citation.]" (*Fidelity Creditor Service, Inc. v. Browne* (2001) 89 Cal.App.4th 195, 199 (*Fidelity Creditor Service*).)

But where the trial court's resolution of a question of law is challenged, its legal conclusion is reviewed de novo. (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712 (*Haraguchi*); see *Casey v. Hill* (2022) 78 Cal.App.5th 1143, 1167 [where challenge to judgment entered under § 1710.40 is founded on whether sister state that entered judgment properly exercised personal jurisdiction over defendant, de novo standard of review applied].) This is the case where an appeal challenging the denial of a motion to vacate the renewal of a judgment is dependent upon the resolution of a question of law. (*Rubin v. Ross* (2021) 65 Cal.App.5th 153, 162.) " '[T]he abuse of discretion standard does not allow trial courts to apply an incorrect rule of law. [Citation.] Consequently, a trial court's resolution of a question of law is subject to independent (i.e., de novo) review on appeal." [Citation.]" (*Id.* at pp. 161-162.) Here, appellants' other principal challenge to the order is that the trial court erred in rejecting the claim that the California judgment was not viable because the Hawaii judgment on which it was based was (allegedly) not timely renewed and therefore unenforceable. This inquiry requires a consideration and interpretation of the applicable statutes, and we thus apply the de novo standard of review. (See *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 527 [trial court's statutory interpretation reviewed de novo].)

**C.    Motion to Dismiss Appeal**

We first address a pending motion to dismiss appeal that was filed by World Botanical after briefing in this appeal was completed. The motion was based upon the claim that appellants had not complied with a postjudgment discovery order by the trial

8

court.  World Botanical argued that the appeal should be dismissed under the disentitlement doctrine based upon the inherent power of the appellate court to dismiss an appeal based upon a party's refusal to comply with a lower court order.  The rationale for applying this doctrine is that "[a] party to an action cannot, with right or reason, ask the aid and assistance of a court in hearing his [or her] demands while he [or she] stands in an attitude of contempt to legal orders and processes of the courts of this state.  [Citations.]" (*MacPherson v. MacPherson* (1939) 13 Cal.2d 271, 277; see also *Stoltenberg v. Ampton Investments, Inc.* (2013) 215 Cal.App.4th 1225, 1229-1230; *TMS, Inc. v. Aihara* (1999) 71 Cal.App.4th 377, 379-380 [dismissal of appeal due to appellant's violation of separate postjudgment discovery order of trial court].)

There is no dispute that appellants failed to comply with a postjudgment order of the trial court.  The sequence of events relevant to this noncompliance is as follows:

**June 30, 2021:**  World Botanical propounds postjudgment interrogatories and document requests upon appellants.

**August 9, 2021:**  Deadline for discovery responses expires without appellants having provided any responses.

**September 9, 2021:**  World Botanical files a motion to compel discovery responses.

**January 18, 2022:**  Trial court grants motion to compel responses, ordering that appellants "provide code-compliant answers and responses (without objections, except for privilege) to the judgment creditor's written discovery within 30 days from the date of service of this order."

**February 23, 2022:**  Deadline for compliance with court order expires without appellants' compliance with the order.

In their opposition to the motion, appellants—far from being contrite or providing a reasonable justification for their noncompliance with their discovery obligations or the trial court's discovery order—launch into an attack on World Botanical's counsel, request

9

sanctions, and argue that the motion to dismiss was filed for an improper purpose and was "harassment."[7] Appellants argue further that, "since the court below clearly lacks jurisdiction [because, appellants claimed, the Hawaii judgment was procured by fraud and] for . . . the other reasons detailed in the appeal, appellants have no legal duty to follow the directive of the court below, which court lacks jurisdiction over the subject matter due to the expiration of its jurisdiction due to the lengthy passage of time."

We conclude that the motion to dismiss has merit. Appellants have not complied with a valid lower court order and have provided no justification for their failure to do so. Their purported justification for ignoring the trial court's order—that the court lacks jurisdiction over them—is an affront to both the trial court, that already ruled that it had jurisdiction by rejecting appellants' arguments in the motion to vacate, and to this court that is reviewing the correctness of that determination.

Based upon the foregoing, it would be entirely appropriate for this court to exercise its discretion by dismissing the appeal under the disentitlement doctrine. Notwithstanding this conclusion, because we are able to decide this controversy and because "[t]he policy of the law favors the hearing of appeals on their merits [citations]" (*Labarthe v. McRae* (1939) 35 Cal.App.2d 734, 738), we will deny the motion to dismiss, and we will exercise our discretion to reach the merits of appellants' challenge to the order of the trial court.

### D. No Error in Denial of Motion to Vacate

#### 1. Claim that Hawaii Judgment Was Procured by Fraud

One of appellants' two principal arguments is that the trial court erred in rejecting their claim that the California judgment should be vacated because the underlying Hawaii

---

[7] After the deadline for discovery responses passed and prior to filing the motion to compel, World Botanical's counsel sent a letter to appellants seeking the responses. Wagner responded by threatening to sue counsel if he "persist[ed] with filing further legal pleadings of any form (including an Answering Brief to the forthcoming *Opening Brief*)."

10

judgment entered in 2009 was procured by fraud.[8]  As they argued below, appellants claim here that persons controlling the Hawaii lawsuit brought by World Botanical "concocted . . . fake criminal charges [against Linda Wagner] from whole-cloth, then conducted the purported 'trial' without <u>any</u> of the defendants-appellants . . . being present to defend against the fake civil charges."  (Original underscoring.)  They assert that in support of their motion to vacate judgment below, they presented, through affidavits, "a <u>chilling account of criminal collusion</u> with judiciary agents by . . . Mark Robinson . . . through his associates in Hawai'i."  (Original underscoring.)[9]  Appellants contend in their brief that (1) Robinson, the trial attorney for World Botanical, and others fraudulently obtained the issuance of an arrest warrant against Linda Wagner; (2) this arrest warrant was served on Linda Wagner and she was arrested during the trial; (3) Wagner left the trial to arrange for his wife's release from custody; (4) the trial proceeded after Linda Wagner's arrest without any defendants present; (5) the Wagners were key witnesses for the defense; and (6) when Wagner returned to court several hours later, he learned that the trial had been concluded a few minutes earlier.[10]

---

[8] Appellants filed a motion for leave to append five documents, including pleadings or orders from Hawaii appellate and trial courts, United States Bankruptcy Court in Nevada, and Utah state court. We deem the motion to be a request for judicial notice, which request is hereby denied. (See *Jordache v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 748, fn. 6 [appellate court will not take judicial notice where the "requests present no issue for which judicial notice of these items is necessary, helpful, or relevant"]; *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 [appellate court ordinarily will not take judicial notice of records not presented to the lower court].)

[9] As asserted by appellants, Robinson was an officer (treasurer) of World Botanical, and is affiliated with BWA, the assignee of a 50 percent interest in the California judgment.

[10] These factual allegations are contrary to the findings made by the Hawaii trial judge.  The trial court recited that the trial took place on April 28 and 29, 2008.  On April 28, only Wagner was present.  Perkins never appeared for trial, and the court granted World Botanical's request for entry of default against him.  Linda Perkins did not appear on April 28; Wagner informed the court that she "would not be present at trial until an unspecified

11

For the reasons, both procedural and substantive, stated below, we conclude that appellants' claim of error is without merit.

### a. Challenge Is Barred Under Section 1710.40

Section 1710.40 was relied upon by appellants in their motion filed below and is cited in their opening brief. Under section 1710.40, subdivision (a), "[a] judgment entered pursuant to this chapter may be vacated on any ground which would be a defense to an action in this state on the sister state judgment." Such motion must be filed "[n]ot later than 30 days after service of notice of entry of judgment pursuant to Section 1710.30." (§ 1710.40, subd. (b).) The procedure specified in section 1710.40 provides "[t]he sole ground for vacating a sister state judgment." (*Liquidator*, *supra*, 54 Cal.App.4th at p. 979.) Thus, a debtor may not challenge a judgment entered under the Act on the grounds of mistake, surprise, or excusable neglect under section 473 (*Liquidator*, *supra*, at p. 979), or by seeking relief from default under section 473.5 (*Conseco Marketing, LLC v. IFA & Ins. Services, Inc.* (2013) 221 Cal.App.4th 831, 844 (*Conseco Marketing*)).

Appellants[11] did not challenge entry of the California judgment in 2010 within 30 days of service of notice of its entry. Instead, inexplicably, they waited until the California judgment was renewed *nine and one-half years* after its original entry to assert their

_____

time later in the case." The court at that time took "under advisement" World Botanical's request for entry of default against Linda Wagner. On April 29, only Wagner appeared when the trial resumed. Linda Wagner appeared briefly at the trial later in the morning. At some point in the morning, Linda Wagner was arrested. After a recess, neither defendant appeared after three calls, and they made no request for a continuance. At the conclusion of the trial on April 29, the court entered default against Linda Wagner. Wagner fails to explain why he did not request a continuance before (as he alleges) he left the courtroom to attempt to secure his wife's release from custody.

[11] The record reflects that the Hawaii judgment as against Perkins was entered by way of default because he did not attend any part of the trial. Therefore, it does not appear that Perkins has any basis to challenge the manner in which the Hawaii judgment was entered after the trial in which he declined to participate. For purposes of our discussion, however, we will attribute the argument concerning the allegedly fraudulently procured Hawaii judgment to both appellants.

12

challenge, under the procedural vehicle of section 1710.40, to the entry of judgment. The motion was untimely in the extreme. (See *Conseco Marketing, supra,* 221 Cal.App.4th at p. 840 [trial court did not abuse its discretion in denying motion to vacate judgment under § 1710.40, where judgment debtors' motion, brought 17 months after service, rather than 30 days as required, was untimely].) Further, although appellants indicated in their motion that they sought to vacate the *renewal* of the California judgment, they did not cite the statutory basis for a motion of this nature (i.e., section 683.170).

The trial court did not indicate the basis for its denial of appellants' motion. "[W]here a statement of reasons is not required and the record is silent, a reviewing court will presume the trial court had a proper basis for a particular finding or order. [Citation.]" (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114; see also *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 958 ["appellate court presumes in favor of the judgment or order all reasonable inferences"].) The trial court would have been justified in denying appellants' motion brought under section 1710.40 because it was not timely filed under that statute. Therefore, affirmance of the order denying appellants' motion to vacate on this procedural ground is proper.

### b. Former Adjudication (Issue Preclusion)

Even were we to ignore the untimely nature of appellants' motion under section 1710.40—and treat it as a timely motion to vacate renewal of judgment under section 683.17, a statute that appellants did not invoke—the trial court did not err by rejecting appellants' claim that renewal of the California judgment should be vacated because the Hawaii judgment was procured by fraud.

The record shows that appellants' challenge to the Hawaii judgment was litigated unsuccessfully previously (many years ago) in two other courts. First, appellants' fraudulent-judgment claim was asserted in the state court proceeding in which the Hawaii judgment was entered. According to appellants' motion papers submitted in the case before the court below, after the trial in April 2008, Linda Wagner submitted a detailed

affidavit in Hawaii in "opposition to the proposed 'judgment.' "[12] In that document, she recited the procedural circumstances, including her arrest during the trial, that are raised by appellants here in claiming that the Hawaii judgment was procured by fraud. Thereafter, the defendants (appellants herein and Linda Wagner) filed a motion for new trial, raising the same fraud arguments. That motion was denied. Appellants (and Linda Wagner) appealed the Hawaii judgment, and the judgment was affirmed by the intermediate court of appeal on September 20, 2011. The Hawaii Supreme Court thereafter denied appellants' and Linda Wagner's application for writ of certiorari on December 6, 2011.

Second, the record shows that Wagner filed a Chapter 7 proceeding in the United States Bankruptcy Court for the District of Utah. World Botanical commenced an adversary proceeding by filing a complaint against Wagner seeking, inter alia, an order that the Wagner's debt created by the Hawaii judgment was not dischargeable in bankruptcy. Wagner filed an answer on April 12, 2013, which included allegations that the Hawaii judgment was entered without the defendants' participation at trial due to Linda Wagner's arrest. Wagner thereafter filed a cross-complaint in that proceeding alleging, inter alia, that the Hawaii judgment was fraudulently obtained by World Botanical. A substantial portion of Wagner's cross-complaint, captioned "FRAUD ON HAWAII COURT," included 20 pages of allegations concerning the proceedings in Hawaii state court. After briefing and a hearing on World Botanical's motion for summary judgment—which was opposed by Wagner—the Bankruptcy Court on December 2, 2013, entered final judgment in favor of Botanical Gardens, concluding,

---

[12] In Wagner's affidavit in support of the instant motion, he attached as an exhibit the affidavit of Linda Wagner filed in Hawaii state court in February 2020. Linda Wagner's 2020 affidavit asserts that the Hawaii judgment was procured by fraud, recites the bases for that argument, quotes extensively from an affidavit that she filed with the Hawaii court in May 2008, and notes further that "[t]hese extensive frauds [were] detailed . . . in the documentation in support of the motion for a new trial."

14

inter alia, that Wagner's debt under the Hawaii judgment was nondischargeable. Thereafter, following a hearing and submission of substantial opposition papers by Wagner (memoranda and four affidavits), the Bankruptcy Court ordered that Wagner's cross-complaint be stricken.

Res judicata is a term that has frequently been used "as an umbrella term encompassing both claim preclusion and issue preclusion, which . . . [is] two separate 'aspects' of an overarching doctrine. [Citations.] Claim preclusion . . . acts to bar claims that were, or should have been, advanced in a previous suit involving the same parties. [Citations.] Issue preclusion, . . . historically called collateral estoppel, describes the bar on relitigating issues that were argued and decided in the first suit. [Citation.]" (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 823–824.)

The California Supreme Court has set forth the five elements of collateral estoppel as follows: "First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding. [Citations]." (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341 (*Lucido*).) The correctness of the prior decision is not material to the application of collateral estoppel, since . . . " 'collateral estoppel may apply even where the issue was wrongly decided in the first action.' [Citations.]" (*Proctor v. Vishay Intertechnology, Inc.* (2013) 213 Cal.App.4th 1258, 1270.)

The record shows that appellants' claim in support of their motion to vacate below is subject to issue preclusion because it was *twice* litigated and decided previously: the challenge that the Hawaii judgment was fraudulently procured was decided by the Hawaii state court, and it was later decided by the Bankruptcy Court in Utah in connection with

15

Wagner's bankruptcy proceeding. Each of the five elements of collateral estoppel enunciated in *Lucido* is satisfied.

First, the issue asserted below is "identical to that decided in [*both*] former proceeding[s]." (*Lucido*, *supra*, 51 Cal.3d at p. 341.) "[A]n issue was actually litigated in a prior proceeding if it was properly raised, submitted for determination, and determined in that proceeding. [Citation.]" (*Hernandez v. City of Pomona* (2009) 46 Cal.4th 501, 511.) The record shows that this occurred in the Hawaii litigation and the Utah bankruptcy proceedings.

Second, the record demonstrates that the issue *was* "actually litigated in the former proceeding[s]." (*Lucido*, *supra*, 51 Cal.3d at p. 341.) " 'An issue is actually litigated "[w]hen [it] is *properly raised*, by the pleadings or otherwise, and is submitted for determination, and is *determined* . . . ." ' [Citation.]" (*Ayala v. Dawson* (2017) 13 Cal.App.5th 1319, 1330, original italics.) In the proceeding in the Hawaii state court, the issue of whether the Hawaii judgment was fraudulently procured was raised both before appeal in a motion for new trial and was encompassed in the appeal of the judgment. In the bankruptcy proceedings, Wagner raised the issue in his answer to World Botanical's adversary proceeding and in his cross-complaint, and the issue was decided by the Bankruptcy Court.

Third, the record shows that the issue was "necessarily decided in the former proceeding[s]." (*Lucido*, *supra*, 51 Cal.3d at p. 341.) Satisfaction of this element "require[s] only that the issue not have been 'entirely unnecessary' to the judgment in the initial proceeding. [Citations.]" (*Id.* at p 342.) Although the point is somewhat awkwardly stated here, appellants' challenge to the Hawaii judgment was clearly *not* an issue that was " 'entirely unnecessary' " to the Hawaii judgment or to the final judgment entered by the Bankruptcy Court.

The fourth and fifth *Lucido* elements are easily satisfied here. The decisions in both the Hawaii state court and in the Bankruptcy Court in Utah were "final and on the

merits." (*Lucido*, *supra*, 51 Cal.3d at p. 341.)  Lastly, the parties here, appellants, are the same as the parties in the Hawaii proceeding.  One of the appellants, Wagner, was the same party in the bankruptcy proceeding.  Since all five elements of collateral estoppel are met as to appellant Perkins as to the former Hawaii state court proceeding, it is inconsequential that Perkins was not a party to the Wagner bankruptcy proceeding.

Lastly, we note that the California Supreme Court has held:  "Even assuming all the threshold requirements [of collateral estoppel] are satisfied, however, our analysis is not at an end.  We have repeatedly looked to the public policies underlying the doctrine before concluding that collateral estoppel should be applied in a particular setting. . . . Accordingly, the public policies underlying collateral estoppel—preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation—strongly influence whether its application in a particular circumstance would be fair to the parties and constitute sound judicial policy. [Citation.]"  (*Lucido*, *supra*, 51 Cal.3d at pp. 342-343.)  We have considered these public policy concerns here and conclude that there is no impediment to applying collateral estoppel in the present setting.

The trial court could have properly found that appellants' motion lacked merit because their claim that the Hawaii judgment was procured by fraud was barred under the doctrine of collateral estoppel.  "A California court, in ruling on a motion to vacate entry of a sister state judgment, may not retry the case. [Citation.]"  (*Blizzard Energy, Inc. v. Schaefers* (2020) 44 Cal.App.5th 295, 298 [finding no abuse of discretion in denial of motion to vacate judgment entered under the Act, where judgment debtor argued that underlying fraud judgment was not supported by the evidence; because sister state judgment was final after debtors' challenge on appeal, res judicata precluded debtors' challenge in California].)  Since no "clear abuse of discretion appears" from the record (*Tsakos Shipping*, *supra*, 12 Cal.App.4th at pp. 88-89; see also *Fidelity Creditor Service, supra*, 89 Cal.App.4th at p. 199), the trial court's order denying appellants' motion to vacate must be affirmed.

17

## 2.    *Claim Based on Renewal of Hawaii Judgment*

Appellants' argue that the renewal of the California judgment by the court below was improper because the 2009 Hawaii judgment was not timely renewed in that state and therefore could not serve as a basis for the renewed judgment here. They argue that the Hawaii judgment became ineffective after September 28, 2019, and therefore "[t]he enforceability of the judgment in California ended on September 28, 2019." (Original boldface omitted.)

We provide a short summary of the procedural circumstances concerning the Hawaii judgment, as presented to the court below in hearing the motion to vacate. In the Hawaii lawsuit, there was a purported judgment entered on February 25, 2009, from which appellants and Linda Wagner appealed. The intermediate court of appeals dismissed that appeal on August 12, 2009, on the ground that the February 25, 2009 purported judgment did not satisfy the requirements of an appealable final judgment. The Hawaii trial court thereafter cured the apparent defect by entering the first amended judgment on September 28, 2009, i.e., the Hawaii judgment upon which the California judgment was entered on September 30, 2010. Less than 10 years later, on September 5, 2019, World Botanical filed in the Hawaii trial court a motion to extend the Hawaii judgment, which was opposed by the Wagners. The Hawaii trial court granted the motion to extend the Hawaii judgment on March 2, 2020. This court understands that this order is currently being challenged by appellants in the Hawaii appellate court.

Appellants contend—using the February 25, 2009 date of entry of the purported judgment that the Hawaii appellate court determined was nonappealable—that the Hawaii judgment was not timely renewed within 10 years as required under Hawaii law and is therefore of no further effect. Because of this assertion—notwithstanding the fact that it was apparently rejected by the Hawaii trial court—appellants argue that it was thus improper for

18

the court below to renew the California judgment. Since the order granting World Botanical's request to renew the Hawaii judgment is presently on appeal in Hawaii, we will assume here, without deciding the matter, that the Hawaii judgment was not timely renewed. We reject appellants' argument that the California judgment cannot be enforced because of the (assumed) expiration of the Hawaii judgment.

Section 1710.35 reads, in part, "[e]xcept as otherwise provided in this chapter, a judgment entered pursuant to this chapter shall have the same effect as an original money judgment of the court and may be enforced or satisfied in like manner." Thus, "the Act provides a judgment creditor with the right to enforce a sister state monetary judgment as if it were a California judgment against the judgment debtor." (*Aspen Internat. Capital Corp. v. Marsch* (1991) 235 Cal.App.3d 1199, 1203; see also *Washoe Development Co. v. Guaranty Federal Bank* (1996) 47 Cal.App.4th 1518, 1522 (*Washoe Development*) ["the new judgment [entered under the Act] has the same effect as an original California money judgment and 'may be enforced or satisfied in like manner' "].) As stated in the Law Revision Commission Comments to section 1710.35, the statute "provides that a judgment entered pursuant to this chapter is to be treated as a judgment of the superior court for purposes of enforcement. Hence, for example, the provisions of this code regarding judgment liens [citation], execution [citations], and supplemental proceedings [citations] apply to the judgment. . . . A judgment entered pursuant to this chapter may be enforced after 10 years as provided by [former] Section 685 [now § 683.110 et seq.]."

The treatment of accrued judgment interest is one example demonstrating that, once a sister-state judgment is "domesticated" in this state, the judgment is treated like any other California judgment. When an application is filed to enter judgment on the sister-state judgment, the Act provides that the law of the sister state is used to calculate interest. (§ 1710.15, subd. (a)(2).) However, after the judgment is entered in this state—consistent with the principle that a judgment entered under the Act is treated the same as any other

California judgment—postjudgment interest accrues *under the laws of California*. (§ 1710.25, subd. (b).)

Likewise, in a recent case, *Blizzard Energy, Inc. v. Schaefers* (2021) 71 Cal.App.5th 832 (*Blizzard Energy II*), the court applied, in another context, the principle that a judgment entered under the Act is treated like any other California judgment. There, the judgment creditor, after obtaining a judgment in California on a sister-state (Kansas) judgment against an individual, Schaefers, sought to amend the California judgment under section 187, under which the trial court is empowered to amend a judgment to include new defendants "on the grounds that a person or entity is the alter ego of the original judgment debtor." (*NEC Electronics Inc. v. Hurt* (1989) 208 Cal.App.3d 772, 778.) The judgment creditor sought to add two entities (limited liability companies) as judgment debtors, asserting that the entities were " 'the alter egos of Schaefers and that recognition of the privilege of separate existence would promote injustice.' " (*Blizzard Energy II*, *supra*, at p. 842.) The trial court granted the motion to amend. (*Ibid.*) The companies and Schaeffer challenged the order on the basis that, since the judgment creditor utilized the summary procedure under the Act to have judgment entered on the sister-state judgment, it could not thereafter amend the judgment in California (*id.* at p. 845); rather, " 'its right to amend the sister state judgment to add a judgment debtor not named in the original sister state judgment was eliminated unless it sought to do so in Kansas.' " (*Id.* at p. 846.) The appellate court rejected this argument. It reasoned: "Section 1710.35 provides that 'a judgment entered pursuant to [the Act] shall have the same effect as an original money judgment of the court . . . .' '[S]ection 187 authorizes a trial court to amend a judgment to add a judgment debtor who is found to be an alter ego of a corporate defendant.' [Citation.] . . . The alter-ego doctrine was extended to LLCs by Corporations Code section 17703.04, subdivision (b) . . . ." (*Ibid.*)

*Roche v. McDonald* (1928) 275 U.S. 449 (*Roche*) involved a judgment that was originally entered in the State of Washington. Prior to the expiration of time for its enforcement under that state's law (six years), the judgment creditor's assignee brought an

enforcement action in Oregon. (*Id.* at p. 451.) The Oregon judgment was entered after the six-year Washington enforcement period. (*Ibid.*) Thereafter, the judgment creditor's assignee filed an action in Washington that was based upon the Oregon judgment. (*Ibid.*) The Washington trial court found in favor of the debtor, and the state supreme court affirmed, reasoning "that under the Washington statute the original judgment expired at the end of six years from its rendition and could not be extended by another suit; that having been rendered when the original judgment had become a nullity, the Oregon judgment had no legal foundation, and, as it would have been void and of no effect if rendered under like circumstances by a court of Washington, could be given no force or effect when sued upon in Washington . . . ." (*Ibid.*) The Supreme Court reversed. It concluded: "It is settled by repeated decisions of this Court that the full faith and credit clause of the Constitution requires that the judgment of a State court which had jurisdiction of the parties and the subject-matter in suit, shall be given in the courts of every other State the same credit, validity and effect which it has in the State where it was rendered, and be equally conclusive upon the merits; and that only such defenses as would be good to a suit thereon in that State can be relied on in the courts of any other State. [Citations.] This rule is applicable where a judgment in one State is based upon a cause of action which arose in the State in which it is sought to be enforced, as well as in other cases; and the judgment, if valid where rendered, must be enforced in such other State although repugnant to its own statutes. [Citations.]" (*Id.* at pp. 451-452.)

An older opinion that predated enactment of the 1974 Act also supports the position that the (assumed) expiration of the Hawaii judgment here has no effect upon the enforceability of, or the ability to renew, the California judgment. In *Weir v. Corbett* (1964) 229 Cal.App.2d 290, 291 (*Weir*), a Washington judgment was entered on October 19, 1956. An action was brought in California on that judgment, and a California judgment was entered on October 16, 1962. (*Id.* at pp. 291-292.) The appellate court rejected the defendants' contention that because the Washington judgment, under that state's law,

21

expired on October 19, 1962 (six years after its entry), the judgment in California was unenforceable after that date. (*Id.* at p. 292.) The court reasoned: "[The d]efendants' theory . . . goes only to show that after October 19, 1962, no further relief was available in the State of Washington. This does not overcome the fact that on October 16 the judgment was in full force and effect as proof of the existence of [the] defendants' duty to pay the debt. While the duty existed, and while the Washington judgment existed as proof thereof, [the] plaintiff sought and obtained a California remedy for the enforcement of that debt. Nothing in the law of California, or in the United States Constitution, requires that the expiration of [the] plaintiff's Washington remedies after that time should nullify the effect of the California judgment." (*Id.* at pp. 295-296.)

Appellants offer no law that supports their position that the fact that the sister-state judgment *may not have been* timely extended by the court in Hawaii—and therefore the judgment was no longer enforceable in Hawaii—prevented the *California court* from renewing the *California judgment* entered in 2010 under the Act. As discussed, *ante*, the law compels a contrary conclusion. Under section 1710.35, the California judgment entered under the Act in September 2010 in favor of World Botanical must be given " 'the same effect as an original money judgment of the court and may be enforced or satisfied in like manner.' " (See also *Washoe Development*, *supra*, 47 Cal.App.4th at p. 1524.) This same treatment includes the renewal of the California judgment under the procedures specified by this state in section 683.110 et seq. (See Cal. Law Revision Com. com., 20 West's Ann. Code Civ. Proc. (2007 ed.) foll. § 1710.35, p. 383.) Just as in *Roche*, *supra*, 275 U.S. at pages 451 to 452, where enforcement of a validly entered judgment on a sister-state judgment was not precluded by the fact that the sister-state judgment had expired under that state's laws, the (assumed) expiration of the Hawaii judgment is immaterial to the validity of the California judgment.

Based upon our de novo review (see *Haraguchi*, *supra*, 43 Cal.4th at pp. 711-712), there was no error in the denial of the motion to vacate based upon the rejection of

22

appellants' legal claim that the California judgment could not be renewed because of the (assumed) expiration of the Hawaii judgment.

### 3.      *Other Claims by Appellants*

Appellants make two other arguments in support of their claim of error:  (1) that World Botanical's assignment in its bankruptcy in Nevada of a fifty percent interest in the judgment to BWA was fraudulent; and (2) said assignment of judgment was made without consideration being given by the assignee, BWA.

On September 25, 2013, the United States Bankruptcy Court in Nevada entered an order authorizing and approving sale of the assets of World Botanical to BWA.  Included in that order was a finding by the court as follows:  "Purchaser [BWA] is a good faith purchaser with respect to the assets, . . .  The sale to BWA, LLC was negotiated, proposed and entered into by the parties in good faith, from arm's length bargaining positions and without collusion, and the Purchaser therefore is entitled to the protections of section 363(m) of the Bankruptcy Code with respect to the assets.  Neither the Debtor nor the Purchaser have engaged in any conduct that would cause or permit the sale to be voided under section 363(m) of the Bankruptcy Code."  The Bankruptcy Court also found that there had been a reasonable opportunity to object or be heard concerning the proposed sale; there had been no qualifying or competing bids; BWA's offer was the highest and best offer; and that the purchase price was "fair and constitute[d] reasonably equivalent value and reasonable market value for the Debtor's assets."

Appellants' challenges here to the sale of World Botanical's assets in the Nevada bankruptcy proceeding appear to have no merit for a number of reasons.  First, it is apparent that such challenge should have been brought by appellants nearly a decade ago in the Bankruptcy Court or in an appeal in federal court of the Bankruptcy Court's order.  There is nothing in the record suggesting that appellants made such challenge.  Second, the order of the Bankruptcy Court appears to be final and binding, and not subject to collateral attack in this California proceeding.  Third, it is questionable whether

appellants would have had standing to challenge the Bankruptcy Court's order. Fourth, under section 683.170, subdivision (a), the grounds for the court to vacate a renewal of judgment are limited to "any ground that would be a defense to an action on the judgment . . . ." Appellants have not established that, assuming there was insufficient consideration given for the sale of World Botanical's assets (specifically the Hawaii judgment), this circumstance would provide "a defense to an action on the judgment." (§ 683.170, subd. (a).)

The trial court did not abuse its discretion by concluding that these additional claims by appellants did not furnish grounds for vacating the renewal of the California judgment. (*Fidelity Creditor Service, supra*, 89 Cal.App.4th at p. 199.)

## III.    DISPOSITION

The May 26, 2021 order denying the motion of appellants Walter Wagner and Dan Perkins to vacate renewal of judgment is affirmed. Costs on appeal are awarded to respondent.

_____

BAMATTRE-MANOUKIAN, ACTING P.J.

WE CONCUR:

_____

DANNER, J.

_____

WILSON, J.

*World Botanical Gardens, Inc. v. Wagner*
**H049234**